Rockingham,
No. 4160.

SUN VALLEY BEACH, INC. *v.* EDWIN G. WATTS & a.

Argued December 1, 1953.
Decided January 29, 1954.

*Richard E. Shute* (by brief and orally), for the plaintiff.

*Frank A. Batchelder* and *Thomas B. Murphy* (of Massachusetts), for the defendants.

DUNCAN, J. If there are restrictions against commercial use in force against the lot which the plaintiff has undertaken to sell to the defendants, they constitute an encumbrance upon the title so that the plaintiff could not convey free from all encumbrances as it has agreed to do. *Nashua Hospital* v. *Gage*, 85 N. H. 335, 336. It was settled by the *Gage* case that: "Whenever it appears that the original owner has adopted a general scheme of development, and has inserted in his deeds of lots restrictions intended by him and agreed by the purchasers to be for their reciprocal benefit, an equitable right is shown." *Id.*, 339. The vital question in this case is whether the plaintiff or its predecessors, as successors to the original owner, and the purchasers from them of the various lots subject to restriction did in fact intend and agree that the restrictions should be for their reciprocal benefit.

It is established that various deeds given by the original owner or its successors conveying lots on the easterly side of the state highway imposed restrictions which were not uniform, but which consistently precluded commercial use. In no instance so far as appears did any grantor expressly agree that like restrictions should apply to other land retained by him. It does appear, however, that prior to these various conveyances the vendors had laid out the estate or portions of it for sale in lots. If the defendants' position is unsound, it is because it does not appear that the vendors intended the restrictions to be for the benefit of all lots intended to be sold, or even for some of those lots.

What was said in the *Gage* case, *supra*, 340, applies to the situation as it existed prior to the conveyances to the plaintiff in 1944 and 1945. Although it could be found that one or more general schemes theretofore existed for some sort of development of land on both sides of the highway, evidence that uniform restrictions were intended to apply to all such land is lacking. "The case for the defendants stands upon the conveyances, unaided by extrinsic evidence. These contain no reference to any reciprocal

rights conferred upon the several grantees. There is a condition in favor of the grantor, but no mention of any other limitation upon the title conveyed. If the existence of reciprocal rights is to be implied here, the inference must be drawn from the fact that all the deeds contain similar conditions reserved to the grantor. The cases wherein this question has received consideration hold that the inference cannot be drawn from that fact alone." *Nashua Hospital* v. *Gage, supra,* 340. See also, *Bristol* v. *Woodward,* 251 N. Y. 275; 3 Tiffany, Real Property (3d *ed.*) *s.* 868.

While the court was concerned in the *Gage* case with transactions which occurred a hundred years ago and the law relating to reciprocal servitudes has since undergone substantial development (*Id.,* 341; see 2 American Law of Property, *s.* 9.30, *et seq*), no reason appears to depart from the general principles laid down in that case as "sound law." *Id.,* 339. We conclude that the evidence fails to establish that grantees of common owners prior to Tavern Investment Corporation, Inc., acquired rights against the lot which the plaintiff has agreed to convey to the defendants.

The effect of the conveyances to the plaintiff and of its conveyance to Ernst must also be considered in determining the defendants' rights. The plaintiff took the premises in question subject to a restriction, "binding upon the [plaintiff] its successors or assigns and all persons claiming thereunder," that "no business . . . [should] be conducted on the said premises." Pursuant thereto, in conveying two lots to Ernst in July, 1944, the plaintiff imposed restrictions against business use. Thereafter, in April, 1945, the land west of the highway was released from any servitude imposed by the deed to the plaintiff of June, 1944.

The restriction contained in the deed to Ernst was sufficiently accounted for by the then existing restrictions created by the deed of Tavern Investment Corporation, Inc. to the plaintiff. They would have been binding upon Ernst in any event. *Burbank* v. *Pillsbury,* 48 N. H. 475. But the land west of the highway, including the lot to be conveyed to the defendants has been freed of any servitude in favor of the plaintiff's grantor. Hence Lot 12 is no longer under servitude unless one persists because of a reciprocal restriction implied from the plaintiff's deed to Ernst. As has already been determined, no such restriction resulted from other deeds of individual lots, given by the plaintiff's predecessors.

The deed to Ernst contained no express provision for reciprocal restrictions upon remaining land of the grantor. The grantor did

reserve, however, the right to conduct a real estate business upon the land retained. This might be thought to indicate an understanding that but for the reservation such a right would be precluded, and therefore that any other business use, not similarly reserved, was intended to be forbidden. But if it be assumed that such an implied restriction was intended, there still remains the question of how much of the land retained was intended to be affected.

The 1944 plan of "Part of Seabrook Beach" referred to in the Ernst deed is not before us. If the lots conveyed are those shown by the same lot numbers upon the 1944 plan which is before us, they are situated some five hundred feet distant from the lot which the defendants have contracted to buy, and on the opposite side of the highway. It is impossible to say with any certainty that any implied restriction in favor of Ernst was intended to attach to land thus separated from the land conveyed. *Cf. Clemence* v. *Mazika*, 73 R. I. 254, 262. The burden of establishing the restriction and its application to Lot 12 is upon the defendants, and it will not be implied upon doubtful evidence. *Loomis* v. *Collins*, 272 Ill. 221, 232; *Lovell* v. *Columbian Nat'l Life Ins. Co.*, 294 Mass. 473, 477, 478. See *Wickwire* v. *Church*, 142 N. J. Eq. 174, 179; *Baederwood, Inc.* v. *Moyer*, 370 Pa. 35. The only express restrictions shown presently to exist are upon lots lying between the highway and the ocean. We cannot say as a matter of law that like restrictions must be implied as to the section of land westerly of the highway, between it and the marsh, where Lot 12 is situate.

The first three questions transferred are answered in the negative, and the fourth in the affirmative.

*Case discharged.*

All concurred.